

1

2

3

4

5

6

7   UNITED STATES DISTRICT COURT

8   NORTHERN DISTRICT OF CALIFORNIA

9

10

11   MONSTER CABLE PRODUCTS, INC.,          No. C 04-0005 MHP

12          Plaintiff,

13      v.                                  **MEMORANDUM AND ORDER**
                                            **Re: Amended Motion to Amend Claim**
14   THE QUEST GROUP d/b/a/ AUDIOQUEST,     **Infringement Charts and Motion to**
                                            **Preclude Untimely Produced Evidence**
15          Defendant.

16   _____/

17

18       _____Plaintiff Monster Cable Products, Inc. filed this action alleging patent infringement against

19   defendant The Quest Group, d/b/a/ AudioQuest ("AudioQuest").  The complaint alleges

20   infringement of United States Patent No. 5,307,416 ("the '416 Patent"), technology relating to audio

21   cable technology.  Now before the court are plaintiff's amended motion for leave to amend its

22   infringement claim charts and motion to preclude untimely produced evidence.  Having fully

23   considered the parties' arguments and submissions and for the reasons set forth below, the court

24   enters the following memorandum and order.

25

26   I.      Motion for Leave to Amend Infringement Claim Charts

27          On April 18, 2005, Monster Cable served Final Infringement Contentions pursuant to Patent

28   Local Rule 3-6(a).  Shortly thereafter, AudioQuest produced an opinion of counsel letter which

indicated that additional accused products included potentially-infringing technology.  Pursuant to

Patent Local Rule 3-7, Monster Cable has moved to amend its infringement claim charts to add six

additional accused devices that it believes AudioQuest improperly failed to identify during

discovery.[1]  AudioQuest objects to such amendment, arguing that it had provided Monster Cable

with schematics of the additional accused devices on February 25, 2005, nearly three months before

Monster Cable submitted its final infringement contentions, and that it was in fact Monster Cable's

passivity in reviewing and conducting research of discovery productions that led to its omission of

the accused devices from its final infringement charts.

The first issue raised in the dispute is whether AudioQuest met its obligations under Patent

Local Rule 3-4, which governs document production accompanying Preliminary Infringement

Contentions.  Monster Cable's Patent Local Rule 3-1 Predisclosures broadly accused "all

AudioQuest products or devices that include AudioQuest's Dielectric-Bias System ("DBS")," but it

did not specifically name the additional accused devices.  Monster Cable argues that AudioQuest's

productions under Patent Local Rule 3-4 were incomplete, because they included technology only for

those specific cables identified on Monster Cable's 3-1 chart by name, rather than any AudioQuest

cables using DBS technology.  In fact, AudioQuest did comply with its obligations under Patent

Local Rule 3-4, which requires a party opposing a claim of patent infringement to produce "[s]ource

code, specifications, schematics . . . and other documentation sufficient to show the operation of any

aspects or elements of an Accused Instrumentality *identified by the patent claimant in its Patent L.R.

3-1(c) chart.*"  Patent L.R. 3-4(a) (emphasis added).  Monster Cable did not name any of the

additional accused devices in its 3-1(c) chart, and the broad language accusing "all" DBS products

was not part of its 3-1(c) chart.  Under the plain language of the local rules, AudioQuest had no

obligation to provide schematics for those products.

Monster Cable also believes that AudioQuest willfully avoided disclosure of these products

in its responses to Monster Cable discovery requests regarding any AudioQuest products including

DBS "or any similar technology."  AudioQuest objected to this broad request, and Monster Cable

agreed to limit its discovery request to "devices or products that use a voltage source other than the

1    electrical signal to bias a cable." AudioQuest agreed to provide supplemental responses, but

2    according to Monster Cable never in fact did so. For its part, AudioQuest argues that Monster

3    Cable's participation in the meet and confer process lapsed, particularly over the price at which

4    AudioQuest was obligated to sell its products to Monster Cable for litigation research, and Monster

5    Cable made no ongoing objections to the content or quantity of AudioQuest's disclosures. Most

6    importantly, AudioQuest continued to make disclosures to Monster Cable, including the schematics

7    of the accused products provided on February 25, 2005. Based on its review of the discovery history

8    between the parties, Monster Cable's failure to file a motion to compel additional compliance, and

9    AudioQuest's February production of the schematics for all accused devises named in Monster

10   Cable's current motion to amend its final infringement chart, this court concludes that there was no

11   obvious culprit in the parties' discovery dispute.

12       The specific question now before this court is whether Monster Cable is entitled to amend its

13   Final Infringement Contentions. Under Patent Local Rule 3-7, the court may permit a party to amend

14   these contentions "only upon a showing of good cause." Pat. L. R. 3-7. As aptly stated by a Judge of

15   this district, the Patent Local Rules are designed "to place the parties on an orderly pretrial track

16   which will produce a ruling on claim construction approximately a year after the complaint is filed."

17   Integrated Circuit Systems, Inc. v. Realtek, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004)

18   (Zimmerman, J.). Requiring "good cause" for amendment mandates that plaintiffs carefully prepare

19   for the filing of a patent suit and be in a position to articulate Final Infringement Contentions

20   approximately five months after filing the complaint. Id. Infringement contentions are not permitted

21   to become a moving target throughout the lawsuit. Id. As stated by another Judge of this district in

22   regards to Patent Local Rule 3-7's predecessor rule 16-9(c),

23       The patent local rules were adopted by this district in order to give claim charts more 'bite.'
         The rules are designed to require parties to crystallize their theories of the case early in the
24       litigation and to adhere to those theories once they have been disclosed. Rule 16-9(c)
         advances this purpose by making it difficult subsequently to revise claim charts through
25       eleventh hour 'discovery' of facts. Unlike the liberal policy for amending pleadings, the
         philosophy behind amending claim charts is decidedly conservative, and designed to
26       prevent the 'shifting sands' approach to claim construction [and] ensure that litigants put all
         their cards on the table up front.

27

28

1    Id. (quoting Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL 775115 at *2-3 (N. D. Cal. Nov.5,

2    1998)).  To effectuate purposes of both efficiency and transparency, application of the rule turns on

3    prejudice to the parties and plaintiff's ability to learn of the additional devices prior to the final

4    infringement contentions date.  This inquiry considers the effect of a change on the parties' positions

5    at claim construction or on dispositive summary judgment motions already brought before the court.

6    See E-Pass Technologies, Inc.  v. 3Com Corp., 222 F. Supp. 2d 1157, 1161 (N.D. Cal. 2002)

7    (Jenson, J.) *vacated on other grounds by* E-Pass Technologies, Inc. v. 3Com Corp., 343 F.3d 1364

8    (Fed. Cir. 2003).

9           Monster Cable has moved to add the additional accused devices under the only means

10   available.  Contrary to AudioQuest's representations, the Patent Local Rules did not authorize

11   Monster Cable to amend its infringement contentions on the basis of the schematics provided during

12   the normal course of discovery.  Patent Local Rule 3-6 provides that a parties Preliminary

13   Infringement Contentions are to be deemed its final contentions unless the court's claim construction

14   ruling or "the documents produced pursuant to Patent L.R. 3-4 so requires."  See Patent L.R. 3-6(a).

15   In such cases, the party may serve, without leave of court, final infringement contentions that amend

16   their preliminary contentions.  Id.  Unless the justification for amendment falls under one of these

17   two exceptions, any amendments to Preliminary Infringement Contentions must be made pursuant to

18   Patent Local Rule 3-7, an amendment request to the court.  In other words, by the text of rules 3-6

19   and 3-7, Monster Cable only had the right to amend its infringement contentions based on 3-4

20   disclosures, not based on other documents given during discovery.

21          Because the schematics at issue were provided as part of AudioQuest's expert file for claim

22   construction, and again on March 23, 2005 incident to general discovery, they did not provide a basis

23   for amendment except by leave of court.  Though this court finds that AudioQuest was not required

24   to label any schematics for the additional accused devices as 3-4(a) original or supplemental

25   disclosures—and indeed was not required to produce these schematics to meet its Patent Local Rule

26   3-4(a) obligations—the court also finds that a patentee must have some mechanism for non-

27   prejudicial amendments of its final infringement claim charts where other courses of discovery have

28

4

1   revealed additional accused products that fall within the same theories of infringement, and where

2   the court's claim construction does not provide an independent justification for adding the devices.[2]

3   The timing of these disclosures after the filing of preliminary infringement contentions and without

4   identification of the disclosures as a Rule 3-4(a) production would otherwise create a loophole in the

5   Patent Local Rules through which defendants could shield their products from infringement claims.

6          In the present action, as in E-Pass, this court has already issued its claim construction order,

7   and cross-motions for summary judgment have been filed and briefed for the court.  While this

8   timing would normally weigh heavily against a late-stage amendment, in this particular case, the

9   parties would not be prejudiced.  Amendment of the claim infringement charts will not prejudice

10  AudioQuest, as each of the additional products have been brought into summary judgment by

11  defendant's pending motion for summary judgment for noninfringement.  As for claim construction,

12  AudioQuest relied on schematics of each of the additional accused devices, and thus its claim

13  construction strategy already took those cable geometries into account.  Monster Cable has asserted

14  no prejudice stemming from amendment, and it has represented that the amendment would not

15  change its position at claim construction.  As disclosed to Monster Cable through AudioQuest's

16  expert file on claim construction, AudioQuest's expert expressly relied on all of the additional

17  accused devices. The court notes that its claim construction would not change for it did not take into

18  account externalities, but only construed the terms in the claims within the context of the patent, i.e.,

19  intrinsic evidence. The court also notes that nothing more was needed since the patent, its

20  specifications and the prior art cited in the prosecution history were sufficient to construe the claims

21  and comply with the Federal Circuit's most recent pronouncement on claim construction. See

22  Phillips v. AWH Corp., ___F.3d___, 2005 WL 1620331 (Fed.Cir. July12, 2005)  Furthermore,

23  Monster Cable's amended infringement charts establish that Monster Cable did not raise any new

24  infringement contentions against the additional accused products.

25          Ultimately, Patent Local Rule 3-7 still requires good cause.  The court does not take kindly to

26  the late arrival of Monster Cable's motion.  It has been in a position to seek leave of court pursuant

27  to 3-7 since the February disclosures.  Monster Cable claims that the February schematics did not

28

1    allow it to identify the schematics of the additional accused devices.  For one of the products,

2    AudioQuest's production specifically stated that the product relied on DBS technology.  For the

3    others, Monster Cable claims that none of the schematics available to Monster Cable expressly stated

4    that the products relied on DBS technology.  Masur Dec. ¶ 14 (attesting that of the schematics

5    produced by AudioQuest, "only the schematics for the Sub-3 state that it includes DBS" and that

6    prior to the February date, AudioQuest had not produced "any document that identified any

7    Additional Accused Product as including DBS").  While this court finds this contention rather frail

8    given that those very schematics were AudioQuest's only technical exhibits submitted to prove non-

9    infringement, the court nevertheless finds that the lack of terminal connections or bias systems on

10   these schematics contributes to Monster Cable's assertion of good cause for amendment.  Though

11   Monster Cable significantly delayed bringing the present motion, neither party will be prejudiced by

12   amendment.  This court finds that good cause has been shown, and Monster Cable's motion to add

13   the six devices to its Final Infringement Contentions is granted.

14

15   II.     Motion to Preclude Untimely Produced Evidence

16        Pursuant to Federal Rules of Civil Procedure 37(c)(1), Civil Local Rule 1-4, and Patent Local

17   Rule 3-4(a), Monster Cable has moved to strike and preclude reliance on all schematic exhibits

18   describing AudioQuest products, as well as all related paragraphs in the declaration of AudioQuest's

19   Vice President of Product Development, Joseph Harley.  They have further moved to deem admitted

20   such facts regarding the operation of accused products identified by Monster Cable in its preliminary

21   claim charts on which AudioQuest's Patent Local Rule 3-4(a) production was silent.  Monster Cable

22   bases its motion on AudioQuest's alleged failure to comply with its disclosure obligations under

23   Federal Rule of Civil Procedure 26(a) and Patent Local Rule 3-4(a).

24        A.     All Challenged Exhibits (Excluding the New Sky Cable)

25        This court has reviewed the disclosure dates of each contested exhibit attached to the Harley

26   Declaration submitted with AudioQuest's motion for summary judgment.  With the exception of one

27   exhibit relating to the New Sky cable (marked Exhibit L, discussed infra), each of these documents

28

1   was given to Monster Cable during discovery on October 25, 2004, January 18, 2005, and February

2   25, 2005 (a set which was served a second time with Bates numbers on March 23, 2005).[3]  In the

3   case of each of these contested exhibits, disclosures were not labeled original or supplemental

4   disclosures as provided under Rule 26(a)(1)(A) or Patent Local Rule 3-4.  However, they were

5   provided to Monster Cable in all instances well before Monster Cable served its final infringement

6   contentions on April, 18, 2005, the filing of AudioQuest's motion for summary judgment on May 16,

7   2005, and the close of factual discovery on October 14, 2005.  Claim construction was argued by the

8   parties during February, 2005, and argued to this court on March 15, 2005.  Monster Cable has raised

9   dramatic and far-reaching cries of prejudice in this case, but stripped of obfuscation, its arguments in

10  relation to these exhibits amount to two issues: (1) whether AudioQuest's disclosures of product

11  schematics pursuant to usual discovery needed to be expressly labeled as disclosures under Patent

12  Local Rule 3-4(a) or Federal Rule of Civil Procedure 26(a)(1)(B) or 26(e)(1) and (2) whether the

13  provision of some schematics following claim construction prejudiced Monster Cable.

14      Monster Cable's Complaint accused any AudioQuest cables containing the company's

15  "Dielectric-Bias System (DBS)."  Compl. ¶ 12.  Monster Cable's initial claim chart, submitted

16  pursuant to Patent Local Rule 3-1(c), enumerated the specific AudioQuest cables publically-named

17  as containing DBS technology.  These Preliminary Infringement Contentions triggered AudioQuest's

18  obligations under Patent Local Rule 3-4(a), which requires a party opposing a claim of patent

19  infringement to produce "[s]ource code, specifications, schematics . . . and other documentation

20  sufficient to show the operation of any aspects or elements of an Accused Instrumentality *identified*

21  *by the patent claimant in its Patent L.R. 3-1(c) chart*."  Patent L.R. 3-4(a) (emphasis added).

22  AudioQuest provided schematics for each of the cables accused on Monster Cable's 3-1(c) chart

23  with the exception of two: AudioQuest's Panther and Cheetah cables.  AudioQuest discovered its

24  omission and completed its 3-4(a) production on December 14, 2004.  See Masur Dec., Exhs. 14-15.

25  At the time of AudioQuest's initial 3-4 production, Monster Cable did not notify AudioQuest or the

26  court of the omissions of Panther and Cheetah cable schematics, and at no time prior to the present

27  motion (filed six months later) did Monster Cable convey any objection to the timing of

28

1    AudioQuest's supplemental production to AudioQuest or to this court. See Lisi Dec. ¶¶ 4-6.  On that

2    basis, the court finds that the omission of the Panther and Cheetah cable schematics was a harmless

3    error corrected in good faith, without prejudice to Monster Cable.

4            The additional source of conflict between the parties lies in AudioQuest's failure to produce

5    schematics for accused products that were not named on Monster Cables's 3-1(c) preliminary

6    infringement contentions chart.  Under the plain language of the local rules, AudioQuest had no

7    obligation to provide schematics for those products.  Monster Cable's broad language accusing "all"

8    DBS products was not part of its 3-1(c) chart. See Masur Dec. (Mot. to Amend Inf. Claim Charts),

9    Exh. F.  This interpretation of the Patent Local Rules is supported by similar reasoning in an

10   unpublished opinion of this court which both parties have cited in the present motion. See Ixys

11   Corp. v. Advanced Power Technology, Inc., 2004 WL 1368860 (N.D. Cal. June 16, 2004) (Patel, J.)

12   (interpreting Rule 3-4(a) disclosure obligations in the context of invalidity contentions to require

13   disclosures of documents describing accused devices, but not other devices which have not been

14   specifically accused). While AudioQuest may have had a duty to produce schematics and drawings

15   relating to devices using DBS technology which were unnamed by Monster Cable's 3-1(c) chart

16   through other channels of discovery, Monster Cable is wrong to attribute this duty to the Local Patent

17   Rules.

18           As for AudioQuest's initial disclosure obligations under Federal Rule of Civil Procedure

19   26(a)(1)(B), the rule requires parties to provide "a copy of, or a description by category and location

20   of, all documents. . . that the disclosing party may use to support its claims or defenses. . ." Fed. R.

21   Civ. P. 26(a)(1)(B).  A party who has made disclosures pursuant to this rule is "under a duty to

22   supplement and correct the disclosure or response to include information thereafter acquired" if

23   ordered to do so, or "if the party learns that in some material respect the information disclosed is

24   incomplete or incorrect and if the additional or corrective information *has not otherwise been made*

25   *known to the other parties during the discovery process* or in writing." Fed. R. Civ. P. 26(e)(1)

26   (emphasis added).  Under the plain text of the rule, as long as a disclosing party is producing copies

27   or descriptions of the documents it will rely on to frame its claims or defenses, it need not label its

28

8

1  on-going discovery production as a supplement to Rule 26(a)(1)(B).  As there is no other basis for

2  challenging the substance or timing of AudioQuest's disclosures of product schematics, Monster

3  Cable's claim for redress rests on a level of formalism which the federal rules do not support.

4  Monster Cable has manifestly failed to warrant the invocation of Federal Rule of Civil Procedure

5  37(c)(1), which governs non-harmless *failures to disclose* information required by Rule 26(a), not

6  choices in labeling those productions.  See Fed. R. Civ. P. 37(c)(1).

7       Several other indicators in the record render Monster Cable's motion meritless.  First of all,

8  despite numerous appearances and months of opportunity prior to the filing of AudioQuest's motion

9  for summary judgment, Monster Cable never once raised its discovery concerns to this court.  As

10  early as August 30, 2004, AudioQuest's responses to interrogatories informed Monster Cable of a

11  "next generation" of DBS products that AudioQuest stated "provide further confirmation that

12  AudioQuest's products do not infringe on the '416 Patent." Masur Dec., Exh. 11 at 9.  Monster

13  Cable did not bring this court's attention to the parties' discovery breakdown over the purchase price

14  of AudioQuest products, which would have enabled Monster Cable to independently investigate

15  AudioQuest technology.  Nor did Monster Cable alert this court of the purported inadequacies in

16  AudioQuest's first or supplemental disclosures under Federal Rule of Civil Procedure 26(a)(1)(A) or

17  Patent Local Rule 3-4(a).  If Monster Cable lacked information that was essential to its contentions at

18  claim construction, its final infringement contentions, or its preparation for dispositive motions, it

19  had ample opportunity to bring this court's attention to that gap prior to this late stage.  Lastly,

20  Monster Cable had the opportunity to depose Mr. Harley regarding the schematics provided during

21  February, and its failure to do so cannot fall on AudioQuest.

22       In addition, Monster Cable has grossly misrepresented an issue of evidentiary sufficiency as

23  an issue warranting discovery sanctions.  On the present motion, Monster Cable has argued the

24  absence of information about certain accused devices' terminal connectors as a basis for sanctions.

25  As a matter of improper discovery production, Monster Cable's arguments are utterly frivolous for

26  two reasons.  First of all, the exhibits submitted to this court are *exactly the same ones disclosed to*

27  *Monster Cable* during discovery.  If those exhibits, in combination with Harley's testimony of his

28

9

1    independent knowledge of the products' functioning, are insufficient to demonstrate or create

2    material disputes relating to non-infringement, AudioQuest will have to face that insufficiency on

3    summary judgment.  For present purposes, the only relevant fact is that Monster Cable's allegations

4    that AudioQuest failed to produce the Harley exhibit schematics prior to AudioQuest's motion for

5    summary judgment is patently false with respect to all except the new Sky cable, discussed below.[4]

6    While this is certainly an appropriate issue of evidentiary sufficiency relating to the dispositive

7    motions simultaneously pending before this court, it has no place in the present motion.

8         Furthermore, Monster Cable has artfully avoided acknowledging a fact within this court's

9    plain view: information about the accused devices' terminal connections was publicly available on

10   AudioQuest's website, the admitted source of Monster Cable's infringement contentions.  The

11   Harley declaration's primary source for information about the accused devices' terminal connectors

12   are excerpts from AudioQuest's website, which Monster Cable has tellingly not moved to strike.  See

13   May 16, 2005 Harley Dec., Exhs. B, D, F, H, J, N, S, U, W, Y, AA, GG, II, MM, OO, and QQ.  If

14   AudioQuest has additional schematics which detail the terminal connectors, it has not produced them

15   in support of its motion for summary judgment, giving Monster Cable no basis to assert that

16   AudioQuest has withheld documents which it is using to support its claims or defenses.

17   Furthermore, if Monster Cable had reason to believe that AudioQuest in fact possessed additional

18   schematics or other documents showing AudioQuest cable terminal connectors that Monster Cable

19   needed in order to finalize its infringement contentions, craft its positions for claim construction,

20   and/or prepare for motions on summary judgment, it should have brought the issue to this court's

21   attention before this late stage.

22        The only remaining issue is whether Monster Cable was prejudiced by the disclosure of some

23   schematics as part of AudioQuest's expert file on claim construction, rather than earlier in the

24   discovery process.  Invocation of sanctions under Federal Rule of Civil Procedure 37(c)(1) requires

25   that the failure to disclose was both unjustified and prejudicial.  See Fed. R. of Civ. P. 37(c)(1) ("A

26   party that *without substantial justification* fails to disclose information required by Rule 26(a) ... is

27   not, *unless such failure is harmless,* permitted to use as evidence ... on a motion ... information not

28

so disclosed").  Monster Cable has given this court no specific basis on which to find that it would

have crafted its claim construction positions differently had it earlier possessed the schematics

question.[5]  Indeed, apparently conceding a lack of prejudice for claim construction, Monster Cable

has not asked this court to reopen claim construction on the basis of the second round of schematic

disclosures which were delivered on February 25, 2005.  In addition to that notable silence, the

timing of disclosures was not prejudicial to Monster Cable for the following reasons: (1) Monster

Cable was in possession of schematics documenting all of the devices accused on its preliminary

infringement contentions chart (and failed to object if it believed that those schematics were

incomplete) months before claim construction, (2) all of the accused devices at issue in

AudioQuest's summary judgement motion rely on the same underlying DBS technology, (3)

AudioQuest's expert file on claim construction was provided prior to Monster Cable's reply brief

and <u>Markman</u> hearing before this court, as well as a subsequent status conference, and at neither

point did Monster Cable raise the issue that schematics of additional products relevant to its claim

construction arguments had been theretofore withheld.

> B.      The Special Case of the New Sky Cable

Despite its sweeping arguments to the contrary, the merits of Monster Cable's motion boil

down to a single exhibit attached to the Harley declaration, the schematic for AudioQuest's New Sky

Cable.  This exhibit was served on May 10, 2005, one week before AudioQuest filed its motion for

summary judgment.[6]  This timing of this disclosure might indeed constitute prejudice to Monster

Cable in both preparing for claim construction and dispositive motions, but for two key facts.  First

of all, on February 25, 2005 and again on March 23, 2005, AudioQuest disclosed to Monster Cable

that the New Sky Cable will have a similar structure to the New Cheetah, Panther, and Jaguar cables,

except that the New Sky Cable "has more air in the insulation tubes for the conductors and uses a

Copper foil instead of an Aluminum foil."  <u>See</u> Lisi Dec. ¶ 8, Exh. C, and Exh. I at AQ 7044-45.

Monster Cable was informed of the schematics for the other cables within this product family, and

the differences among this sub-set of cables are irrelevant to claim construction or infringement.

Secondly, the New Sky cable has not yet left production or been sold publicly.  July 5, 2005 Harley

1   Dec. ¶ 2.  The court thus finds that in the case of the New Sky Cable, AudioQuest has shouldered its

2   burden to show that its failure to disclose the Exhibit L schematic before claim construction was

3   harmless.  See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1007 (9th Cir. 2001)

4   (holding that it is the obligation of the party facing sanctions for belated disclosure to show that its

5   failure to comply with Rule 26 was either justified or harmless).

6

7   CONCLUSION

8          For the foregoing reasons, Monster Cable's motion for leave to amend its claim infringement

9   charts is GRANTED.  Monster Cable's motion to preclude untimely produced evidence is DENIED.

10

11         IT IS SO ORDERED.

12

13  Date:    August 8, 2005

14                                                        MARILYN HALL PATEL
                                                          United States District Court Judge
15                                                        Northern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

12

**ENDNOTES**

1. These AudioQuest devices include: the Sub-3 subwoofer cable, the CV-4 speaker cable, the KE-4 speaker cable, the Gibraltar cable, the Rockefeller cable, and the Leopard tone arm cable.

2. Even in the case of the Sub-3 cable, which AudioQuest's schematics explicitly identified as using DBS technology, Monster Cable could not have added this device to its final infringement chart without seeking leave under Patent Local Rule 3-7.

3. The full range of challenged Harley declaration exhibits covered by this discussion includes: A, C, E, G, I, J, K, L, M, R, T, V, BB, CC, DD, EE, FF, HH, JJ, KK, LL, NN, PP, and QQ. See Mot. to Prec. at 1.  Specifically, those disclosures contained the following documents: October 25, 2004 (Exhibits BB, FF) and January 18, 2005 (Exhibits A, C, E, G, J, K, P, Q, R, T, V).  See Lisi Dec. ¶ 8, Exh. C; May 16, 2005 Harley Dec., Exhs. A-RR.  On February 25, 2005, Exhibits I, M, X, Z, CC, DD, EE, HH, JJ, KK, LL, NN, P P, and RR were first delivered without Bates numbers to Monster Cable as part of AudioQuest's expert file on claim construction, and each of these documents was then reserved on March 23, 2005, at Monster Cable's request, with Bates numbers.  Id.  The remaining exhibits attached to the Harley declaration are uncontested by Monster Cable, including: Exhibits B, D, F, H, J, N, S, U, W, Y, AA, GG, II, MM, OO, and QQ.  See Mot. to Prec. at 1.

4. An example of Monster Cable's misrepresentation to the court on this issue lies in its very own "illustrative" example of inadequate schematic disclosures.  See Mot. to Preclude at 3.  Monster Cable has attested that Exhibit G of the Harley declaration containing the schematic for the original Sky cable was produced "[l]ess than a week before AudioQuest served its motion for summary judgment."  Id.  A simple comparison of Bates numbers confirms that in fact, Monster Cable received this exact document on January 18, 2005, five months before AudioQuest filed its motion for summary judgment.  This court will give Monster Cable the benefit of the doubt that it inadvertently confused Exhibit G, relating to the original Sky cable, with Exhibit L, relating to the new Sky cable.  Such a benefit of the doubt is the only barrier standing between this court and the impression that Monster Cable has wasted this court's time on recklessly baseless arguments that discredit its intentions on the present motion.

5. Of course, there is inherent danger in this position since it would suggest that plaintiff's claim construction is not based on intrinsic evidence, but is unnecessarily looking to extrinsic evidence to frame its construction.

6. One additional schematic attached to the Harley declaration, identified as Exhibit O and relating to the Original Kilimanjaro, was also delivered with AudioQuest's May 10, 2005 production. Monster Cable has not moved to strike that exhibit, presumably because it has voluntarily withdrawn that cable from this action.