KENNETH E. KELLER (SBN 71450) (kkeller@kksrr.com)
CHRISTOPHER T. HOLLAND (SBN 164053) (cholland@kksrr.com)
MICHAEL D. LISI (SBN 196974) (mlisi@kksrr.com)
LORI L. BEHUN (SBN 202309) (lbehun@kksrr.com)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:  (415) 249-8333

Attorneys for Defendant,
THE QUEST GROUP, d/b/a AUDIOQUEST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MONSTER CABLE PRODUCTS, INC., | Case No.: CV 04-0005 MHP (E-File) |
| Plaintiff, | **AUDIOQUEST'S MOTION FOR ATTORNEYS' FEES** |
| v. | |
| THE QUEST GROUP, d/b/a AUDIOQUEST, | Date:          September 26, 2005 |
| Defendant. | Time:          2:00 p.m. |
| | Judge:        Hon. Marilyn Hall Patel |
| | Courtroom:  15, 18th Floor |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2005 at 2:00 p.m. or as soon thereafter as the matter may be heard in Courtroom 15, 18th Floor of the United States District Court, 450 Golden Gate Avenue, San Francisco, California, the Honorable Marilyn Hall Patel presiding, Defendant The Quest Group, d/b/a AudioQuest ("AudioQuest") will and hereby does move this Court for an award of attorneys' fees in the amount of $592,002.14.

AudioQuest's motion is made pursuant to Fed. R. Civ. Pro. 54 and Civil L.R. 54, and is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Christopher T. Holland, the Declaration of J. Mark Holland, the pleadings and papers previously filed with this Court, further briefing in reply to any opposition by Monster Cable Products, Inc. ("Monster"), and any other matters that may be presented to the Court at the hearing.

## ISSUE TO BE DECIDED (Civil L.R. 7-4(a)(3))

Whether the Court should award AudioQuest attorneys' fees and related expenses under 35 U.S.C. § 285, 28 U.S.C. § 1927, and/or the Court's inherent powers, and if so, in what amount.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BRIEF FACTUAL BACKGROUND ................................................................. 3

    A.   The Timing of This Lawsuit Shows That Monster Filed Suit in Bad Faith
        and for Anticompetitive Purposes .............................................................. 4

    B.   It Is Apparent That Monster Did Not Conduct an Adequate Pre-filing
        Investigation ............................................................................................... 6

    C.   Monster Engaged in Frivolous Motion Practice ........................................ 9

        1.   Monster's Unsuccessful "Motion for Leave to File Motion for
            Reconsideration" ........................................................................... 9

        2.   Monster's Unsuccessful "Motion to Preclude Untimely Produced
            Evidence" ...................................................................................... 10

    D.   Monster Abused the Discovery Process by Serving 785 Requests for
        Admission ................................................................................................. 11

III.  SEVERAL GROUNDS EXIST FOR AWARDING ATTORNEYS' FEES TO
    AUDIOQUEST ................................................................................................. 12

    A.   AudioQuest, as the Prevailing Party, Is Entitled to Attorneys' Fees Under
        35 U.S.C. § 285 Because This Is an "Exceptional Case" ......................... 13

        1.   Attorneys' Fees Are Warranted Under Section 285 Because
            Monster Filed This Suit for an Improper Purpose ...................... 14

        2.   Attorneys' Fees Are Warranted Under Section 285 Because
            Monster's Claims of Infringement Were Frivolous From the Outset ........... 14

        3.   Attorneys' Fees Should Be Awarded to AudioQuest Under Section
            285 Because of Monster's Entire Course of Conduct Throughout
            This Litigation ............................................................................. 15

    B.   AudioQuest Is Also Entitled to Attorneys' Fees Under 28 U.S.C. § 1927 ............. 16

    C.   The Court Should Award AudioQuest Attorneys' Fees Under the Court's
        Inherent Powers ....................................................................................... 17

IV.   AUDIOQUEST'S REQUESTED FEE AWARD IS REASONABLE ................. 18

    A.   The Number of Hours AudioQuest's Counsel Reasonably Expended ................... 18

    B.   The Hourly Billing Rates of AudioQuest's Counsel Are Reasonable ..................... 20

V.    CONCLUSION ................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apex Oil Co. v. Belcher Co. of New York, Inc.*
 855 F.2d 1009 (2nd Cir. 1988) ................................................................. 17

*Automated Business Companies, Inc. v. NEC America, Inc.*
 202 F.3d 1353 (Fed. Cir. 2000) ................................................................ 13

*Beckman Instruments, Inc. v. LKB Produkter AB*
 892 F.2d 1547 (Fed. Cir. 1989) ................................................................ 13

*Blum v. Stenson*
 465 U.S. 886 (1989) .............................................................................. 18, 20

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.*
 723 F.2d 1573 (Fed. Cir. 1983) ................................................................ 21

*Cinquini v. Donohoe*
 1996 WL 79822, *8 (N.D. Cal. 1996) ...................................................... 16

*Clark v. City of Los Angeles*
 803 F.2d 987 (9th Cir. 1986) .................................................................... 18

*Dreiling v. Peugeot Motors of America, Inc.*
 768 F.2d 1159 (10th Cir. 1985) ............................................................... 16

*Dula v. Amereon, Ltd.*
 2004 WL 1586410, *4 (S.D.N.Y. 2004) .................................................. 20

*Eltech Systems Corp. v. PPG Industries, Inc.*
 903 F.2d 805 (Fed. Cir. 1990) ........................................................... 13, 14

*Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*
 279 F.3d 1022 (Fed. Cir. 2002) ......................................................... 13, 15

*Ferland v. Conrad Credit Corp.*
 244 F.3d 1145, fn. 4 (9th Cir. 2001) ....................................................... 18

*Fink v. Gomez*
 239 F.3d 989 (9th Cir. 2001) .................................................................... 17

*Gillette Co. v. Energizer Holdings, Inc.*
 405 F.3d 1367 (Fed. Cir. 2005) .................................................................. 9

*Hensley v. Eckerhart*
 461 U.S. 424, fn. 3 (1983) ........................................................... 18, 19, 20

*In re Elonex Phase II Power Management Litigation*
 279 F.Supp.2d 521 (D. Del. 2003) .......................................................... 16

*Interspiro USA, Inc. v. Figgie Intern. Inc.*
 18 F.3d 927 (Fed. Cir. 1994) .................................................................... 13

*Keith v. Volpe,*
 501 F.Supp. 403 (C.D. Cal. 1980) ........................................................... 21

*Missouri v. Jenkins*
 491 U.S. 274 (1989) .................................................................................. 20

*Moore v. University of Notre Dame*
 22 F.Supp.2d 896 (N.D. Ill. 1998) ........................................................... 21

*Network Caching Technology LLC v. Novell Inc.*
  2002 WL 32126128, \*5 (N.D. Cal. 2002) ................................................................ 7

*New Alaska Development Corp. v. Guetschow*
  869 F.2d 1298 (9th Cir. 1989) ............................................................................... 16

*Roadway Express, Inc. v. Piper*
  447 U.S. 752 (1980) ................................................................................................ 17

*Travelers Ins. Co. v. St. Jude Medical Office Bldg., Ltd.*
  154 F.R.D. 143 (E.D. La. 1994) ............................................................................ 16

Ulead Systems, Inc. v. Lex Computer & Management Corp.
  151 F.Supp.2d 1192 (C.D. Cal. 2001) .................................................................. 20

*Ultra Coachbuilders, Inc. v. General Sec. Ins. Co.*
  229 F.Supp.2d 284 (S.D.N.Y. 2002) ..................................................................... 20

*Van Gerwen v. Guarantee Mut. Life Co.*
  214 F.3d 1041 (9th Cir. 2000) ............................................................................... 18

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*
  208 F.3d 981 (Fed. Cir. 2000) .................................................................................. 6

**Statutes**

28 U.S.C. § 1927 ......................................................................................................... 16

35 U.S.C. § 285 ........................................................................................................... 13

Civil L.R. 7-9(b) ........................................................................................................... 9

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

The unfortunate truth about this case is that Monster should never have filed it.  Even the most superficial review of AudioQuest's product line would have revealed that every single AudioQuest coaxial cable does not include the DBS™ system that supposedly was the "basis" for Monster's allegations in this lawsuit.  Conversely, every single one of AudioQuest's accused DBS™ products use cables that are plainly and clearly not coaxial cables, and thus are not covered by the '416 Patent.

That point is particularly relevant in connection with this Court's consideration of AudioQuest's current motion for attorneys' fees.  All indications are that Monster performed no detailed review of AudioQuest's products prior to initiating this action.  Rather, from the "shotgun" nature of its complaint against all "cables containing" DBS™, it appears that Monster simply based this action on the improper hypothesis that any "cable-charging system" would infringe its '416 Patent, without performing a detailed, element-by-element analysis of each asserted claim against each product it intended to accuse in order to ensure that a good faith basis for this case actually existed, as Federal Rule of Civil Procedure 11 clearly requires.

More disturbingly, it further appears that Monster initially obtained an opinion of counsel that must have been adverse to its desire to pursue AudioQuest at all costs, because shortly thereafter it obtained a second such opinion, only this time from its litigation counsel Mayer, Brown, Rowe & Maw LLP, the firm that it retained to file (and that in fact did file, less than 30 days later) this lawsuit.  For a patentee to obtain not one, but two, written opinions from outside counsel is highly unusual.  To obtain them so close together in time – and the second one immediately prior to initiating the action, from the very firm retained to pursue the action – is not simply unusual, but highly suspect pre-litigation conduct. [1]

---

[1]    Monster has claimed privilege as to the content of those opinions.  However, should Monster rely upon those opinions to refute AudioQuest's claim that Monster brought this suit in bad faith and without adequate investigation, Monster should be required to produce those opinions.

It is true that the "normal" rule in this country is premised upon all litigants "paying their own way." However, that system is fundamentally premised upon plaintiffs: (1) acting only on good faith claims; and (2) not having underlying, anticompetitive motives. Sadly, neither of those concepts is applicable to Monster in this case.

On the contrary, Monster plainly has had only anticompetitive motives here, and from the outset of this case has focused on a singular goal: forcing AudioQuest at literally every turn to expend as much time and attorneys' fees as possible on this case. The reason for Monster's misconduct is abundantly clear, as AudioQuest has indicated from very early on in this matter: Monster has long held a virtual stranglehold on the audio cable mass market, and AudioQuest had the temerity to rise up and compete head-to-head with Monster in that mass market.

Amazingly, and as is well-documented in this case, AudioQuest's competition with Monster had little or nothing to do with the accused DBS™ products, since Monster itself does not sell any charged cable products, and has never sold any such products in the eight years since it purchased the '416 Patent rights. Rather, like it has done in numerous other lawsuits before this one (against smaller, less savvy competitors), Monster simply once again elected to use the litigation process as a means of trying to stifle good faith competition.

Monster's bad faith in this particular case is further demonstrated by at least the following:

- Monster's refusal to formally acknowledge that Claim 1 of the '416 Patent was not at issue in this case until eight months after the Complaint was filed (that "acknowledgement" finally came only after Monster filed its Preliminary Infringement Contentions, and even then it was couched as being withdrawn only "at this time");

- Monster's refusal to dismiss the five products that had no conceivable "conductive shield" until after AudioQuest filed its summary judgment motion, even though any review of those products would have revealed as much;

- Monster's refusal to withdraw its 785 Requests for Admission until five days before AudioQuest's responses to them were due, despite repeated acknowledgements from Monster's counsel that those items of written discovery had absolutely no bearing at all on the claim construction and other issues on which AudioQuest's summary judgment motion was based;

- Monster's refusal to withdraw its claim of literal infringement until the summary judgment hearing, only after it had forced AudioQuest to expend fees briefing that portion of the case unnecessarily; and

- Monster's filing of at least three separate meritless motions:

(1) its Motion for Leave to File Motion for Reconsideration of this Court's Claim Construction Order (which this Court itself stated "defies grammar and logic");

(2) its Motion to Preclude Evidence, including the Harley Declaration (which the Court similarly found "utterly frivolous); and

(3) its "affirmative" Motion for Summary Judgment (which at no point contained any element-by-element comparison of the '416 Patent claims at issue to the accused AudioQuest products).

With respect to that final point, Monster's failure to provide any element-by-element comparison with its Motion for Summary Judgment can only mean one thing: even at this extremely late date, Monster has performed no such comparison of the '416 claims to the accused products.

In contrast to Monster's misconduct, at every opportunity AudioQuest attempted to resolve this matter without further involvement by the Court, and at a minimum to reduce the number of issues before the Court. In addition to making repeated efforts to resolve the dispute as soon as the case was filed (both through counsel, direct contact by the party principals, and via mediation), AudioQuest served a Rule 68 Offer of Judgment prior to the start of the claim construction process, in an effort to avoid the very costly process of simply proving the obvious: that its DBS™ system was not used on any of its coaxial cable products, and hence there could be no infringement of Claims 2-5 of the '416 Patent. Not only did Monster reject that Rule 68 proposal, it contended the offer was not even valid.[2]

For all of those reasons, this Court should find that this case qualifies as an exceptional case under 35 U.S.C. 285, and/or should hold Monster liable for AudioQuest's attorneys fees based on 28 U.S.C. § 1927 or the Court's inherent powers. This Court should grant AudioQuest's fee motion in its entirety.

## II.    BRIEF FACTUAL BACKGROUND

On August 8, 2005, this Court granted AudioQuest's summary judgment motion and entered judgment in favor of AudioQuest, thereby dismissing this case in its entirety. (*See* Docket Nos. 125, 126.) While the Court's decision validates AudioQuest's belief that Monster failed to conduct an

---

[2] *See* Declaration of Christopher T. Holland in Support of AudioQuest's Motion for Attorneys' Fees ("Chris Holland Decl."), ¶ 3.

adequate investigation to determine whether it had a reasonable basis for asserting infringement – because, fundamentally, none of the Audio Quest cables are "coaxial cables" – AudioQuest is not basing the current motion on that ruling alone.  Rather, as detailed below, AudioQuest bases this motion on the entire course of Monster's conduct in this litigation, which compels the finding that this is an exceptional and/or vexatious case and that an award of attorneys' fees to AudioQuest's is therefore warranted.

### A.  The Timing of This Lawsuit Shows That Monster Filed Suit in Bad Faith and for Anticompetitive Purposes

AudioQuest has always believed that Monster filed this lawsuit as a direct result of AudioQuest's success in the marketplace and its resulting exclusive agreement with Magnolia Audio Video ("Magnolia"), a subsidiary of Best Buy and national retailer of high-end audio and video equipment.  Very simply, all indications are that when Monster realized that AudioQuest's success might affect Monster's bottom line, it filed a baseless patent infringement suit in an attempt to eliminate AudioQuest as a competitor.  AudioQuest's belief in that regard is based on the entire sequence of events leading up to AudioQuest's agreement with Magnolia and the suspicious timing of this lawsuit.

In September of 2003, Magnolia approached AudioQuest to discuss AudioQuest potentially becoming Magnolia's sole supplier of cable products.  *See* Declaration of Joseph Harley in Support of AudioQuest's Motion for Attorneys' Fees ("Harley Fee Decl."), ¶ 2.  At that time, Magnolia retail stores were carrying cable products from both AudioQuest and Monster.  *Id*.

AudioQuest and Magnolia continued to negotiate a potential supplier agreement over the next several months.  Then, in early January, 2004, AudioQuest and Magnolia finalized the details of an agreement by which AudioQuest would be the exclusive supplier of cables products for Magnolia. *Id*., ¶ 3.  Around the same time that the AudioQuest agreement was being negotiated, Magnolia announced its intention to significantly increase its retail presence by opening Magnolia Home Theater stores within several Best Buy locations around the country.  *Id*., ¶ 4.

AudioQuest's agreement with Magnolia represented an unprecedented business opportunity for AudioQuest.  In addition to numerous stand-alone Magnolia Audio Video stores (eleven in

4

California), Magnolia Home Theater stores can now be found within selected Best Buy stores across the country, including twenty-three in California. *Id.*, ¶ 5. As a result of obtaining an exclusive deal with a nationwide retailer like Magnolia, AudioQuest has experienced significant sales and growth. *Id.*

It appears that in late December of 2003, Monster's founder and CEO Noel Lee met with Magnolia in an unsuccessful attempt to try to convince Magnolia to continue carrying Monster cable products. *Id.*, ¶ 6. Given Monster's size and sophistication, it is more than reasonable to expect that Monster was well aware of Magnolia's negotiations with AudioQuest and the risk of losing a major retailer; indeed, with a company such as Monster, it is virtually inconceivable that it was unaware of the growing AudioQuest threat at Magnolia.

In January 6, 2004, just two days before the 2004 International Consumer Electronic Show in Las Vegas – and just days after Monster failed to convince Magnolia to keep carrying Monster cable products – Monster served its complaint in this action on AudioQuest, alleging that AudioQuest infringed the '416 Patent. *Id.*, ¶ 7. Days later, at the International Consumer Electronic Show itself – which is a major event in the electronics industry – Monster publicly announced that it had filed this patent infringement suit against AudioQuest. *Id.*, ¶ 8. As a result of that announcement, AudioQuest began receiving inquiries from the press and others in the electronics industry regarding the merits of this lawsuit. *Id.* Given the timing of this lawsuit, AudioQuest firmly believes that Monster strategically filed suit to coincide with the Consumer Electronic Show and thereby damage AudioQuest's reputation, and that Monster's suit was a direct response to Magnolia's exclusive deal with AudioQuest. *Id.*, ¶ 9.

That belief is supported by a number of other factors and evidence, including Monster's response to AudioQuest's Interrogatory No. 1, which asked Monster to describe all opinions that Monster had obtained regarding the validity, enforceability or infringement by AudioQuest of the '416 Patent. *See* Chris Holland Decl., Exh. L. In response, Monster identified two opinions – the first dated <u>November 26, 2003</u> from the firm LaRiviere, Brubman (*sic*, Grubman) & Payne LLP, and the second dated <u>December 19, 2003</u> from Monster's current litigation counsel Mayer, Brown, Rowe

1    & Maw LLP. [3]  *Id.*

2         The dates of those opinions speak volumes of Monster's bad faith and anticompetitive

3    motives in bringing this suit.  Shortly after Monster presumably "caught wind" of Magnolia's

4    discussions with AudioQuest, Monster apparently had its patent counsel search Monster's patent

5    portfolio to find something – indeed, apparently <u>anything</u> – to assert against AudioQuest in an

6    attempt to jeopardize AudioQuest's deal with Magnolia.  From Monster's discovery response, it is

7    not clear if Monster's patent counsel was even able to provide a favorable opinion on AudioQuest's

8    purported infringement of the '416 Patent, because Monster apparently obtained a second opinion on

9    that issue on December 19, 2003 from its litigation counsel.

10        In sum, when the merits of this case – especially the total lack of any DBS™ system existing

11   on a coaxial cable as required by the '416 Patent – are considered in light of events describe above, it

12   becomes clear that Monster filed this suit not in a good faith attempt to enforce its patent rights, but

13   rather in an attempt to harass and oppress AudioQuest and sabotage AudioQuest's standing with

14   Magnolia.  Monster should now be held responsible for the attorney's fees that AudioQuest incurred

15   in defending this baseless suit.

16        **B.    It Is Apparent That Monster Did Not Conduct an Adequate Pre-filing**
             **Investigation**

17        As indicated above, AudioQuest believed from the outset that this suit had no merit and was

18   filed for an improper purpose.  Indeed, as this case progressed, it became clear that in its rush to sue

19   AudioQuest, Monster had failed to conduct an adequate pre-filing investigation to determine whether

20   there was any reasonable basis for its claims of infringement, as required by Rule 11.  *See View*

21   *Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  As one court

22   in this District has explained:

23

24            … FRCP 11 requires that a plaintiff compare an accused product to its
              patents on a claim by claim, <u>element by element basis</u> for at least one
              of each defendant's products.  While the court is reluctant to hold that
25            in all cases such a comparison requires reverse engineering of the

26   ─────────────────────

27   [3]    A search of the Patent and Trademark Office database reveals that the firm LaRiviere,
            Grubman & Payne LLP has prosecuted several of Monster's recent patent filings.  *See* Chris
28          Holland Decl., ¶ 22.

defendant's products, the court finds that <u>reverse engineering or its equivalent is required</u>.

*Network Caching Technology LLC v. Novell Inc.*, 2002 WL 32126128, *5 (N.D. Cal. 2002) (emphasis added).

Several factors lead to the conclusion that Monster fell far short of meeting its obligation under Rule 11 to compare each accused product with each element of the asserted claims. Perhaps the most telling is Monster's general approach to this litigation, wherein from the beginning, Monster demonstrated an inability (or worse, an unwillingness) to clearly state the boundaries of its claims against AudioQuest. For instance, despite AudioQuest's repeated requests for clarification, Monster refused to affirmatively state whether it was asserting Claim 1 of the '416 Patent against AudioQuest – which requires "digital gates" that are clearly not present in the AudioQuest cables – even when it served its Disclosure of Asserted Claims and Preliminary Infringement Contentions in September, 2004.[4] *See* Chris Holland Decl., ¶¶ 18-19. In truth, Monster's position on Claim 1 stemmed from its failure to conduct a full and complete investigation of AudioQuest's products before filing its complaint. As a result of Monster's stonewalling on Claim 1, AudioQuest was forced to incur significant attorney fees analyzing that claim and searching for relevant prior art. *Id.*, ¶ 20.

Another telling factor is Monster's eventual concession – almost a year and a half into this litigation – that five of the AudioQuest cables that it originally accused in its complaint did not include a "conductive shield" and thus could not infringe the asserted claims. Had Monster conducted an adequate pre-filing investigation into those cables – indeed, simply by purchasing samples of the products or at a minimum reviewing the technical information about those cables on AudioQuest's website – it would have been clear that those products do not include a "conductive shield" under any reasonable construction of that term, and that Monster did not have any basis for including those products in its complaint.[5] In truth, Monster's allegations regarding those products

---

[4]     Even in Monster's Disclosure of Asserted Claims and Preliminary Infringement Contentions, Monster vaguely stated that it was asserting "at least claims 2 through 5" of the '416 Patent. *Id.*, ¶ 18, Exh. J.

[5]     Monster may assert that it withdrew the five AudioQuest products because of the Court's

were unreasonable and frivolous from the outset, and for the reasons set forth below, AudioQuest should at least be awarded its attorneys' fees for having to defend that portion of Monster's claim. [6]

The various procedural motions that Monster filed also reveal that Monster did not comply with its obligations under Rule 11 by reverse engineering the accused products or performing an equivalent analysis.  Specifically, in Monster's Motion for Leave to Amend its Infringement Charts and Motion to Preclude Untimely Produced Evidence, Monster complained that AudioQuest was remiss in timely producing documents describing the AudioQuest products, and therefore deprived Monster of the information that it needed to perform an infringement analysis.  But Monster's arguments betrayed a fundamental point – Monster could have, and in fact should have, purchased a sample of each accused product <u>before</u> it filed suit in order to conduct an infringement analysis in compliance with Rule 11, instead of just throwing together a patent infringement complaint and waiting for discovery from AudioQuest.

Lastly, Monster's failure to adequately investigate this suit before filing, and its continued failure to reassess its claims of infringement throughout the litigation, is shown by Monster's meritless motion for summary judgment of infringement, which did not even contain an element-by-element comparison of at least Claim 2 of the '416 Patent with each of the accused products, and thus was frivolous on its face.  Instead, in that motion, Monster only superficially addressed the three means-plus-function limitations of Claim 2, while completely ignoring other limitations such as "single line" and "output of a first electrical device."[7]  That glaring omission shows that even well after claim construction, Monster continued to flout its investigation obligations in this case.  It also

---

Claim Construction Order.  But the Court's construction of "conductive shield" as "an outer conductor that reduces the effect of electrical interference on the voltage varying electrical signal carried on the center conductor" is certainly not an unexpected construction of that term, in light of the disclosure of the '416 Patent and the common understanding in the art, and the fact that Monster itself proposed a very similar construction of that term.

[6]   An award of fees based on five of the twenty products at issue in this case would come to **$148,000.54** (or 0.25 (5/20) of AudioQuest's $592,002.14 in total fees).

[7]   Incredibly, Monster did not even argue that these limitations were irrelevant to the question of infringement because they appeared in the preamble, like it did, for instance, with "coaxial cable."  Instead, Monster completely ignored those limitations.

1  shows Monster's bad faith in forcing AudioQuest (and this Court) to expend significant resources

2  dealing with a motion that had no chance of success.

3       Put simply, as shown by the various factors detailed above, Monster was manifestly

4  unreasonable in assessing infringement, and therefore AudioQuest should be awarded the attorneys'

5  fees it incurred in defending this frivolous lawsuit.

6       **C.    Monster Engaged in Frivolous Motion Practice**

7       In an attempt to salvage a case that never should have been brought, Monster filed various

8  motions in this action challenging the Court's Claim Construction Order and AudioQuest's

9  incontrovertible evidence of non-infringement.  Monster's motions were not based on good faith

10  legal and factual arguments, but rather, as noted by the Court, "defie[d] grammar and logic," were

11  "utterly frivolous," and were "patently false."  (*See* Docket No. 66, p. 2; Docket No. 124, p. 9, 10.)

12  As explained further below, AudioQuest should at a minimum be awarded fees incurred as the result

13  of Monster's frivolous motion practice, which needlessly increased the cost of this litigation.  Those

14  fees total **$16,975**.

15       **1.    Monster's Unsuccessful "Motion for Leave to File Motion for
              Reconsideration"**

16

17       After the Court issued its Claim Construction Order, Monster filed a procedurally and

18  substantively groundless "Motion for Leave to File Motion for Reconsideration" of that Order, based

19  solely on the faulty premise that the Court's construction of "coaxial cable" was inconsistent with the

20  subsequent decision *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367 (Fed. Cir. 2005).  (*See*

21  Docket No. 57.)  But for Monster to meet the threshold requirements for such a motion (and certainly

22  to comply with Rule 11), Monster was required to "specifically show" either "a material difference

23  in fact or law" or "the emergence of new material facts or a change in law."  *See* Civil L.R. 7-9(b)

24  (emphasis added).  As indicated by the Court's denial of that motion, Monster's Motion for Leave

25  fell far short of that showing.  (*See* Docket No. 66.)

26       Specifically, in denying Monster's motion, the Court found that Monster "willfully misreads

27  this court's order, as well as the '416 Patent."  *Id.*, p. 1.  The Court also rejected Monster's argument

28  that *Gillette* represented a "change in law" by noting that Monster's "reading of [Gillette] is distorted

and fails to acknowledge the actual language of the patent upon which the Federal Circuit ruled" and that "Gillette cited the very case upon which this court relied in interpreting the effect of 'having' on construction of a 'coaxial cable having a center conductor and conductive shield.'" *Id.*, p. 2.  In closing, the Court held that it "refuses to impart Monster Cable's strained and surreal formalism to the Federal Circuit's holding in Gillette." *Id.* (emphasis added).

In reality, Monster did not set forth any change in law or new facts in its unsupported Motion for Leave that would have warranted reconsideration of the Court's Claim Construction Order. Instead, Monster sought reconsideration based on the same arguments it made in its claim construction briefs and during the claim construction hearing, which the Court had already rejected and Civil L.R. 7-9(c) expressly prohibits ("[n]o motion for leave to file a motion for reconsideration may repeat any oral or written arguments ….  Any party who violates this restriction shall be subject to appropriate sanctions.").  As a result, it is clear that Monster's motion was meritless on its face.

While AudioQuest was not required to file a response to Monster's Motion for Leave, AudioQuest did incur attorneys' fees as a result of that motion, because AudioQuest's counsel was required to review and research Monster's motion in order to advise AudioQuest and in anticipation of further briefing on the issue.  In total, AudioQuest incurred **$1,510** in attorney's fees related to that motion, which, as explained further below, should be awarded to AudioQuest.  *See* Chris Holland Decl., ¶ 12.

## 2.    Monster's Unsuccessful "Motion to Preclude Untimely Produced Evidence"

In response to AudioQuest's Motion for Summary Judgment, which set forth clear evidence that the accused products do not infringe the '416 Patent, Monster filed a "Motion to Preclude Untimely Produced Evidence" directed at the very evidence Monster should have already been aware of had it conducted an adequate pre-filing investigation.  (*See* Docket No. 87.)  Faced with that evidence – evidence that it clearly did not like – Monster elected not to confront the merits of AudioQuest's position, but instead concocted several confusing and unsupported arguments that the evidence should be precluded.

As with Monster's failed Motion for Leave, the Court denied Monster's baseless Motion to

Preclude.  (*See* Docket No. 124.)  In doing so, the Court found the motion to be "meritless," that it "grossly misrepresented an issue of evidentiary sufficiency as an issue warranting discovery sanctions," that its "arguments are utterly frivolous," and that its allegations were "patently false." *See id.*, p. 9, 10.  Moreover, in a passage particularly telling of Monster's bad faith in bringing its motion, the Court observed, with reference to "an example of Monster Cable's misrepresentations to the court":

> This court will give Monster Cable the benefit of the doubt that it inadvertently confused Exhibit G, relating to the original Sky cable, with Exhibit L, relating to the new Sky cable.  Such a benefit of the doubt is the only barrier standing between this court and <u>the impression that Monster Cable has wasted this court's time on recklessly baseless arguments that discredit its intentions on the present motion</u>.

*Id.*, p. 13, n. 4 (emphasis added).

In truth, Monster did indeed waste the Court's time in bringing its Motion to Preclude, and forced AudioQuest to unnecessarily incur attorneys' fees in the amount of **$15,465**.  *See* Chris Holland Decl, ¶ 12.  Based on the statutes and case law discussed below, Monster should compensate AudioQuest for those fees.

### D.     Monster Abused the Discovery Process by Serving 785 Requests for Admission

On April 26, 2005, Monster served AudioQuest with <u>785</u> requests for admission.  *See* Chris Holland Decl., ¶ 13.  All but thirteen of those requests purportedly sought admissions relating to AudioQuest's non-infringement positions.  *Id.*  However, it was not necessary for Monster to propound several hundred requests for admission to obtain that information, because Monster had already sought AudioQuest's non-infringement positions through its interrogatories.  *Id.*, ¶ 14.

In addition to being duplicative of other discovery requests, many of Monster's requests bore no relation to the actual language of the patent claims or the Court's Claim Construction Order, and therefore were entirely irrelevant to the issues in this case.  For example, Request for Admission No. 53 asks AudioQuest to "[a]dmit that the DBS of the Jaguar cable includes a Voltage Source that biases the Jaguar cable."  *Id.*, ¶ 15.  That request is irrelevant to the question of infringement, because nowhere do the claims of the '416 Patent recite "biasing the cable."  Moreover, Request for Admission No. 20 asks AudioQuest to "[a]dmit that more than two conductors of the Jaguar cable

share an axis." *Id.* But the claims do not cover a device with more than two conductors that share an axis, as noted in the Court's Order granting AudioQuest's Summary Judgment Motion. *See* Docket No. 125. As a final example, Request for Admission No. 24 asks AudioQuest to "[a]dmit that more than one of the conductors of the Jaguar cable is a Conductive Shield." *Id.* That request is also not probative of infringement, both in view of the plain language of the claims as well as the Court's construction of "coaxial cable" as a two-conductor cable with <u>one</u> center conductor and <u>one</u> conductive shield.

While AudioQuest's responses to Monster's 785 requests for admission were pending, AudioQuest filed its Motion for Summary Judgment, which set forth its primary non-infringement positions. *See* Chris Holland Decl., ¶ 16. Because AudioQuest's motion provided most of the information sought by Monster's requests for admission, AudioQuest took Monster up on its offer (communicated in the cover letter to its requests) to meet and confer "in an attempt to determine whether any may be withdrawn." *Id.* During those discussions, however, Monster refused AudioQuest's request for an extension of time to respond to Monster's voluminous discovery. *Id.*

A mere five days before AudioQuest's responses were due, Monster finally agreed to withdraw all of its requests for admission, except for thirteen document authentication requests. *Id.*, ¶ 17. In the meantime, AudioQuest was forced to incur significant attorneys fees (in the amount of **$6,405**) preparing responses and objections to the 785 requests, and in meeting and conferring with Monster regarding the withdrawal of its oppressive discovery. Given that Monster's requests were exceedingly voluminous, duplicative of other discovery, and largely irrelevant, it must be concluded that they were served for the primary purpose of harassing and burdening AudioQuest. Thus, AudioQuest should be awarded its fees related to responding to those needless requests.

## III.   SEVERAL GROUNDS EXIST FOR AWARDING ATTORNEYS' FEES TO AUDIOQUEST

As outlined below, several circumstances in this case weigh in favor of the Court awarding to AudioQuest the entire amount of reasonable attorneys' fees it incurred in defending this case. For example, under 35 U.S.C. § 285, AudioQuest is entitled to attorneys' fees because it was the prevailing party, and Monster's conduct in bringing and prosecuting this suit make this case

exceptional.  Moreover, the improper and bad faith conduct that Monster engaged in throughout this litigation is sanctionable under 28 U.S.C. § 1927 and/or the Court's inherent powers, and caused AudioQuest to expend significant attorneys' fees.  Thus, AudioQuest asks that the Court exercise its discretion in compensating AudioQuest for at least those unnecessary fees.

### A.  AudioQuest, as the Prevailing Party, Is Entitled to Attorneys' Fees Under 35 U.S.C. § 285 Because This Is an "Exceptional Case"

Under 35 U.S.C. § 285, the prevailing party to a patent suit may recover reasonable attorneys' fees in "exceptional" cases.  *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").  "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit."  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

When applied to a patentee who brings an infringement suit, "the reasonableness of the patentee in assessing infringement [is] a proper consideration."  *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).  In other words, where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence," thereby warranting attorney's fees.  *Id.*; *see also Automated Business Companies, Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1354 (Fed. Cir. 2000) (case exceptional where "circumstances demonstrate[d] that the litigation was baseless.").  Moreover, "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional."  *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002).

In this case, the evidence is clear and convincing that Monster: (1) filed this suit for an improper and anticompetitive purpose; (2) was manifestly unreasonable in initially assessing infringement and in continuing to assert infringement; and (3) engaged in litigation misconduct by filing frivolous motions and propounding oppressive discovery on AudioQuest.[8]  Each of those

---

[8]   Whether a case is "exceptional" under 35 U.S.C. § 285 is a factual question that must be

13

factors makes this case "exceptional" under Section 285.

1. **Attorneys' Fees Are Warranted Under Section 285 Because Monster Filed This Suit for an Improper Purpose**

As detailed above, Monster did not file this suit in a good faith attempt to enforce the '416 Patent.[9] Rather, Monster filed this suit to eliminate AudioQuest as a competitor altogether. In fact, Monster strategically timed this lawsuit – by filing suit days before the 2004 Consumer Electronics Show – to maximize the damage it would do to AudioQuest's burgeoning relationship with Magnolia and to tarnish AudioQuest's reputation in the electronics industry.

While the '416 Patent may afford Monster certain protections, it does not permit Monster to engage in frivolous litigation against a competitor that clearly has not infringed upon Monster's patent rights and who is otherwise engaged in lawful competition. Indeed, that is precisely the type of conduct by a patentee that Section 285 is meant to prevent. *See Eltech*, 903 F.2d at 810 ("… under § 285 the interest of the patentee in protecting his statutory rights is balanced by the interest of the public in confining such rights to their legal limits.") As a result, based on all of the evidence set forth above showing Monster's bad faith in bringing this suit, Monster should now be held responsible under Section 285 for the attorney's fees AudioQuest has incurred in defending this baseless suit.

2. **Attorneys' Fees Are Warranted Under Section 285 Because Monster's Claims of Infringement Were Frivolous From the Outset**

Not only do the merits and timing of Monster's suit show its bad faith, Monster's bad faith can also be inferred from its abject failure to adequately investigate this suit before filing, its continued failure to reassess its claims of infringement throughout the litigation, and its refusal to meaningfully consider AudioQuest's attempts to settle this suit. *See Eltech*, 903 F.2d at 811. That bad faith justifies an award of fees under Section 285.

As set forth above, it is apparent that Monster did not reasonably assess its claims of

---

[9] shown by clear and convincing evidence. *Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994).
Among other things, Monster admitted that it has never sold any products covered by the '416 Patent.

infringement – either before filing suit or after discovery – because even a most superficial review of the accused AudioQuest cables reveals that they are not "coaxial cables," as required by the asserted claims. Indeed, had Monster conducted an adequate investigation into the accused cables, by reverse engineering the cables or at a <u>minimum</u> reviewing the extensive technical information about those cables on AudioQuest's website, it would have been clear that five of the accused cables do not include a "conductive shield."

Monster, however, withdrew those cables only after AudioQuest filed its summary judgment motion, thus forcing AudioQuest to incur significant fees to defend utterly unreasonable claims of infringement. Moreover, had Monster adequately investigated its allegations, it would not have refused to confirm whether Claim 1 of the '416 Patent was at issue in this case, when under any reasonable analysis the accused AudioQuest cables could never come close to falling within the limitations of that claim.

In short, these and all of the other factors outlined above indicate that Monster has taken a slipshod approach to its obligations under Rule 11 in its rush to file suit against AudioQuest in an effort to remove AudioQuest from the marketplace. Monster should be sanctioned under Section 285 for such recklessness.

### 3. Attorneys' Fees Should Be Awarded to AudioQuest Under Section 285 Because of Monster's Entire Course of Conduct Throughout This Litigation

As stated above, "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional." *Epcon*, 279 F.3d at 1034.

Here, AudioQuest has set forth an extensive list of improper litigation conduct that Monster engaged in throughout this litigation in a clear effort to increase AudioQuest's litigation costs. Those include: (1) filing a unfounded Motion for Reconsideration of the Court's Claim Construction Order (which the Court stated "defies grammar and logic" and "willfully misreads this court's order, as well as the '416 Patent"); (2) filing a Motion to Preclude the very evidence that shows that Monster's initial claims of infringement were baseless and which Monster should have been aware of before filing suit (a motion which the Court similarly found to be "utterly frivolous" and contained

15

"misrepresentations" that gave the "impression that Monster Cable has wasted this court's time");
(3) filing an "affirmative" summary judgment motion that failed to include any element-by-element
comparison of the asserted claims to the accused AudioQuest products; and (4) serving 785 requests
for admission that were duplicative of other discovery requests and largely irrelevant to the issues in
this case.

   All of those actions demonstrate that Monster vexatiously multiplied this litigation, making
this an exceptional case under Section 285.  As such, not only should AudioQuest be awarded the
fees it incurred as a result of Monster's litigation misconduct (which total **$23,380**), AudioQuest
should also be awarded all of the fees it incurred in defending this improper suit.

### B.    AudioQuest Is Also Entitled to Attorneys' Fees Under 28 U.S.C. § 1927

   28 U.S.C. § 1927 gives the Court the authority to assess sanctions, including attorneys' fees,
against an attorney who "vexatiously multiplies" any proceeding: "any attorney …who so multiplies
the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy
personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such
conduct."  28 U.S.C. § 1927.

   An award of sanctions under Section 1927 is appropriate upon a "showing of intent to
prosecute a claim that lacks a plausible legal or factual basis, or a showing of bad faith or reckless
conduct," which led to unnecessary proceedings.  *New Alaska Development Corp. v. Guetschow*, 869
F.2d 1298, 1306 (9th Cir. 1989); *see also Cinquini v. Donohoe*, 1996 WL 79822, *8 (N.D. Cal.
1996) (Plaintiff's insistence on prosecuting his claim "in the face of clear authority that his claim is
frivolous evidences his bad faith and wrongful purpose," and warrants sanctions under Section
1927); *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1166 (10th Cir. 1985) (sanctions
under Section 1927 appropriate where Plaintiffs "continued to assert their claims against [defendant]
'long after it would have been reasonable and responsible' to dismiss the claims.").

   In addition to instances where a party continues to prosecute an unmeritorious claim, courts
have awarded attorneys' fees under Section 1927 where attorneys have vexatiously multiplied
proceeding with actions taken during motion practice or discovery.  *See, e.g., In re Elonex Phase II
Power Management Litigation*, 279 F.Supp.2d 521, 525 (D. Del. 2003) (fees incurred in responding

16

to a "facially meritless" motion awarded under § 1927); *Travelers Ins. Co. v. St. Jude Medical Office Bldg., Ltd.*, 154 F.R.D. 143, 144 (E.D. La. 1994) (sanctions appropriate against attorneys who brought frivolous motions); *Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 1009, 1019 (2nd Cir. 1988) (discovery abuses sanctionable under § 1927).

The circumstances of this case provide several grounds for an award of fees under Section 1927. Those include Monster's counsel prosecution of claims of patent infringement that had no basis from the outset (and that were motivated by anticompetitive purposes, apparently based on opinions of counsel that provided dubious support for those claims) and their refusal to withdraw those claims well after it would have been reasonable to do so. Moreover, Monster and its counsel engaged in the frivolous motion practice and abusive discovery tactics described above, which unreasonably multiplied these proceedings and forced AudioQuest to unnecessarily incur substantial attorney's fees. The Court should sanction Monster's counsel at least under Section 1927 for such misconduct.

**C.     The Court Should Award AudioQuest Attorneys' Fees Under the Court's Inherent Powers**

In addition to its authority under 35 U.S.C. § 285 and 28 U.S.C. § 1927, the Court has the authority to impose sanctions, such as attorneys' fees, under its "inherent powers," "which are necessary to the exercise of all others." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

Under the Court's inherent powers, the Court may award attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

As a result, the Court's inherent powers provide yet another basis for giving AudioQuest redress for Monster's bad faith conduct in filing this baseless suit for anticompetitive purposes, failing to conduct a reasonable pre-filing investigation, refusing to withdraw its claims of infringement even when the documents AudioQuest provided during discovery clearly showed that Monster's claims had no basis, refusing to meaningfully respond to Audio Quest's settlement efforts, filing three frivolous motions (each of which the Court denied in no uncertain fashion), and serving

17

1  an oppressive 785 requests for admission that sought the same information that AudioQuest provided

2  in other discovery responses and in its summary judgment motion.  Put simply, for these and all of

3  the other factors outlined in this motion, AudioQuest asks the Court to sanction Monster and its

4  counsel for its misconduct in the form of attorneys' fees.

5  **IV.   AUDIOQUEST'S REQUESTED FEE AWARD IS REASONABLE**

6         The starting point in determining what constitutes "reasonable" attorneys' fees is the lodestar

7  figure, which is the number of hours reasonably expended on the litigation multiplied by a

8  reasonable hourly rate.  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149, fn. 4 (9th Cir.

9  2001).[10]

10        In calculating an award of reasonable attorneys' fees, the Court should "focus on the

11  significance of the overall relief obtained by the [party] in relation to the hours reasonably expended

12  on the litigation …. The most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at

13  435-36 (emphasis added).  Indeed, "[w]here a [party] has obtained excellent results, his attorney

14  should recover a fully compensatory fee.  Normally this will encompass all hours reasonably

15  expended on the litigation …." *Id.* at 435. [11]

16  **A.    The Number of Hours AudioQuest's Counsel Reasonably Expended**

17        Applying the principles set forth above, AudioQuest calculated its proposed lodestar figure

18

19  [10]   Although in most cases the lodestar figure is presumptively a reasonable fee award, the Court
20         may, if circumstances warrant, adjust the lodestar figure to account for the following factors:
       (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the
21         skill required to perform the legal services rendered; (4) the attorneys' opportunity costs; (5)
       the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation;
       (7) any time limitations; (8) the amount in controversy and the results obtained; (9) the
22         experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the
       relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Id.;
23         Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing*Hensley
       v. Eckerhart*, 461 U.S. 424, 430, fn. 3 (1983) ). The novelty and difficulty of the issues, the
24         quality of representation, the special skill and experience of counsel, and the results obtained
       are factors ordinarily subsumed by the initial lodestar calculation. *See Blum v. Stenson*, 465
25         U.S. 886, 898-900 (1989).

26  [11]   In addition to the attorneys' fees AudioQuest has incurred throughout the litigation,
       AudioQuest may recover attorneys' fees for the time spent establishing its entitlement to a fee
27         award.  *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).  Thus, those fees
       are included as part of AudioQuest's fee request, and are set forth in the accompanying Chris
28         Holland Declaration.

by first determining the number of hours that it reasonably expended on this litigation.[12]   The

appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result

achieved, in the same manner that an attorney traditionally is compensated by a fee-paying client

…." *Hensley*, 461 U.S. at 431.

As described in the accompanying Chris Holland Declaration and Declaration of J. Mark

Holland ("J. Mark Holland Decl."), the hours AudioQuest's counsel expended on this litigation

included time spent on investigation, discovery, depositions, numerous Patent Local Rule

disclosures, the claim construction process, Monster's multiple procedural motions, and the parties'

competing summary judgment motions. [13]   *See* Chris Holland Decl., ¶ 4; J. Mark Holland Decl., ¶ 2.

The 2265.3 hours that AudioQuest's counsel spent were reasonable under the circumstances

of this case.  Monster ultimately accused twenty AudioQuest products of infringing four claims of

the '416 Patent and, as a result, AudioQuest's counsel was required to perform a comprehensive

analysis of each accused product.  AudioQuest's counsel also conducted a thorough prior art search,

and was required to prepare and serve numerous Patent Local Rule disclosures, including

Preliminary and Final Invalidity Contentions under Local Rules 3-3 and 3-6, Exchange of Proposed

Terms and Claim Elements for Construction under Local Rule 4-1, Exchange of Preliminary Claim

Constructions and Extrinsic Evidence under Local Rule 4-2.  AudioQuest's counsel was also

required to jointly prepare and file the parties' Joint Claim Construction and Prehearing Statement

under Local Rule 4-3.

As further part of the claim construction process, AudioQuest's counsel drafted and filed a

Responsive Claim Construction Brief and supporting expert declaration under Local Rule 4-5,

---

[12]   AudioQuest has not sought an upward multiplier of its lodestar figure, nor has it included in its fee calculation every single time entry billed to this case.  *See* Chris Holland Decl., ¶ 4. That further shows that AudioQuest's request for fees is a reasonable one.

[13]   AudioQuest includes a summary of attorney, paralegal, and case clerk time entries in Exhibits A to the Chris Holland Declaration and the J. Mark Holland Declaration.  Due to the attorney-client and work product privileged nature of those time entries, the actual time entries have not been produced.  Moreover, the production of actual time entries would reveal AudioQuest's strategy and approach to this case, and thus would prejudice AudioQuest given Monster's intended appeal of the Court's Summary Judgment Order.  However, should the Court wish to review actual time entries *in camera*, AudioQuest will so provide them.

19

created graphical materials that were presented at the claim construction hearing, and coordinated with AudioQuest's expert Dr. Villasenor to prepare a tutorial to explain to the Court the technology underlying the '416 Patent.

After the Court issued its Claim Construction Order, the parties filed competing summary judgment motions, which required extensive briefing and included a 30(b)(6) deposition of AudioQuest.  Importantly, AudioQuest's counsel obtained "excellent results" with AudioQuest's summary judgment motion, which the Court granted, thereby dismissing this case in its entirety and entering judgment in AudioQuest's favor.  As a result of that unquestionable success, AudioQuest's fee award should "encompass all hours reasonably expended on the litigation …."  *Hensley*, 461 U.S. at 435.

### B.     The Hourly Billing Rates of AudioQuest's Counsel Are Reasonable

Requested attorney billing rates are reasonable if they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, fn. 11 (1984).

As set forth in further detail in the accompanying declarations, the hourly rate charged by AudioQuest's lead attorney, Chris Holland, was $300, which was discounted from his standard rate of $400 per hour.  *See* Chris Holland Decl., ¶ 7.  Mr. Holland's partner, Kenneth Keller, charged $400 per hour, as opposed to his standard rate of $500 per hour.  *Id*.  AudioQuest's co-counsel Mark Holland charged $385 per hour.  *See* J. Mark Holland Decl., ¶ 4.  The hourly rate charged by associates ranged from $190-$250.  *See* Chris Holland Decl., ¶ 7; J. Mark Holland Decl., ¶ 4. Paralegals and case clerks charged $60-125 per hour.[14]  *Id*.

Those billing rates are well within the range charged by attorneys and paralegals of comparable skill, reputation, and experience practicing at California firms, as evidenced by the American Intellectual Property Law Association's ("AIPLA") "Report of the Economic Survey" for the year 2003.  *See* Chris Holland Decl., Exh. G.[15]  The AIPLA report shows that the median hourly

---

[14]    Paralegal time is also compensable in an award of attorneys' fees.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).

[15]    The AIPLA "Report of the Economic Survey" has been used by other courts to determine

20

1  billing rate of partners practicing in the field of intellectual property in California was $398 in 2003.

2  *Id*. The hourly billing rate of the "75th percentile" of partners was $470. [16] *Id*. For associates, the

3  median hourly billing rate was $272 in 2003, and the billing rate of the "75th percentile" of

4  associates was $315. The rates charged by AudioQuest's attorneys fall well below the "75th

5  percentile," and in most cases are, in fact, below the median.

6      Multiplying the number of hours reasonably expended on this litigation by counsels'

7  reasonable hourly rates, and including other recoverable legal expenses that AudioQuest has

8  incurred, AudioQuest's lodestar figure comes to **$592,002.14**.[17] Because that figure is reasonable,

9  and because AudioQuest obtained "excellent results" in having this case dismissed, AudioQuest

10  should be awarded the entirety of those fees.

11                         **V.    CONCLUSION**

12      For the forgoing reasons, AudioQuest submits that its total fee request of $592,002.14 is

13  reasonable and appropriate in this case, and respectfully request that the Court award AudioQuest

14  this amount in its entirety. In the alternative, AudioQuest should at least be awarded the attorneys'

15  fees that it incurred as a result of Monster's frivolous motion practice and abusive discovery tactics,

16

17      reasonableness of billing rates. *See, e.g.,* Ulead Systems, Inc. v. Lex Computer & Management Corp., 151 F.Supp.2d 1192, 1211-12 (C.D. Cal. 2001); *Ultra Coachbuilders,*

18  *Inc. v. General Sec. Ins. Co.*, 229 F.Supp.2d 284, 288 (S.D.N.Y. 2002); *Dula v. Amereon, Ltd.*, 2004 WL 1586410, *4 (S.D.N.Y. 2004). As described by the AIPLA, the report

19  "examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services." *Id*. The AIPLA's

20  website indicates that an updated report for 2005 will be published in September, 2005. *Id*.
If history serves, the 2005 report will indicate an increase in average billing rates from 2003,

21  which would further show the reasonableness of counsels' rates.

22  [16] The AIPLA report explains that "when all reported values are listed from highest to lowest, the 75th percentile identifies the point on the list that is equal to or greater than 75 percent of

23  the reported values and equal to or less than 25 percent." *See* Chris Holland Decl., Exh. G.

[17] AudioQuest also includes in its lodestar amount expenses that it incurred for postage,

24  facsimiles, federal express, messenger services, long distance, legal research, including prior art searching, and reasonable travel expenses, which federal courts have held are recoverable

25  as attorneys' fees. *See, e.g. Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("We interpret attorney fees to include those sums that the prevailing

26  party incurs in the preparation for and performance of legal services related to the suit.");
*Keith v. Volpe*,  501 F.Supp. 403, 415 (C.D. Cal. 1980); *Moore v. University of Notre Dame*,

27  22 F.Supp.2d 896, 915 (N.D. Ill. 1998). AudioQuest has included such expenses only in its request for attorneys' fees – AudioQuest has not included these expenses in its Bill of Costs.

28  *Id*.

1   which total $23,380.

2                                              Respectfully submitted,

3   Dated:  August 22, 2005            KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

4

5                                       By: _____/s/_____

6                                              CHRISTOPHER T. HOLLAND
                                               Attorneys for Defendant
7                                              THE QUEST GROUP, d/b/a AUDIOQUEST

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28