UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER CABLE PRODUCTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE QUEST GROUP d/b/a/ AUDIOQUEST,<br>Defendants. | No. C 04-0005 MHP<br><br>**MEMORANDUM AND ORDER**<br>Re: Motion for Attorneys' Fees |

   Plaintiff Monster Cable Products, Inc. filed this patent infringement action against defendant The Quest Group, d/b/a/ AudioQuest ("AudioQuest"). The complaint alleges infringement of United States Patent No. 5,307,416 ("the '416 Patent"), which relates to audio cable technology. The court entered final judgment for defendant on August 8, 2005. Now before the court is defendant's motion for attorneys' fees in the amount of $592,002.14. Having fully considered the parties' arguments and submissions and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

   Both plaintiff Monster Cable and defendant AudioQuest are manufacturers of connecting cables for audio equipment. Monster Cable is the assignee of the '416 Patent, which relates generally to coaxial cables that make use of a biased conductive shield to reduce electromagnetic

1

1 interference with the transmitted signal. In January, 2004, Monster Cable filed the instant lawsuit,
2 alleging that AudioQuest's audio cables infringe claims of the '416 Patent. The court resolved the
3 lawsuit in AudioQuest's favor by granting summary judgment of noninfringement on August 8,
4 2005. Having prevailed on the merits, AudioQuest now seeks to recover in full the attorneys' fees
5 incurred in defending this lawsuit. In support of its motion, AudioQuest alleges a host of abuses
6 beginning with the investigation leading up to the lawsuit, continuing through discovery and claim
7 construction, and culminating in Monster Cable's cross-motion for summary judgment of
8 infringement.

9 The parties offer different explanations for the motivation behind this lawsuit. According to
10 AudioQuest, Monster Cable hastily filed the lawsuit in response to AudioQuest's growing success in
11 the marketplace. Specifically, approximately at the same time the lawsuit was filed, a national
12 vendor of home theater systems decided to cease selling Monster Cable's products and entered into
13 an exclusive arrangement with AudioQuest. For its part, Monster Cable claims that it was alerted in
14 the fall of 2003 that AudioQuest's products were similar to the invention claimed in the '416 Patent,
15 that it investigated whether AudioQuest's products likely infringed the '416 Patent, and that as a
16 result of the investigation it filed this lawsuit.

17 The extent of Monster Cable's prefiling investigation is the principal issue underlying this
18 motion. Prior to filing the complaint in this lawsuit, Monster Cable performed a physical
19 investigation of one of AudioQuest's products—a one-meter "Jaguar" cable—and prepared a claim
20 chart comparing the Jaguar cable to claim 2 of the '416 Patent. Monster Cable did not perform
21 physical evaluations of AudioQuest's other products. Instead, relying on publicly available
22 specifications for AudioQuest's other biased cable products, Monster Cable accused all such
23 products in its complaint.

24 Following fact and expert discovery, the court held a Markman hearing on March 15, 2005,
25 in which it construed six terms used in claim 2 of the '416 Patent. See March 18, 2005 Claim
26 Construction Order. Relevant to the current motion, the court construed the term "coaxial cable" as

a "cable with two conductors that share an axis." This construction was unfavorable to Monster Cable, as none of AudioQuest's products has a simple coaxial structure.

On May 4, 2005, Monster Cable filed a motion seeking leave to request reconsideration of the Markman ruling, citing particular language in an intervening Federal Circuit opinion, Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367 (Fed. Cir. 2005). The language in Gillette, read in isolation, might have supported a broader claim construction. The court denied Monster Cable's motion because when read in context the language did not suggest any change in the law. See Order of May 18, 2005.

After the court issued its Markman ruling, Monster Cable served an interrogatory requesting that AudioQuest provide updated noninfringement contentions. AudioQuest ultimately agreed to provide updated contentions no later than May 12, 2005. On April 25, 2005, while Monster Cable's request was still pending, the parties attended a case management conference at which AudioQuest expressed an intent to file a motion for summary judgment of noninfringement. Allegedly in response to AudioQuest's stated intention, on April 26, 2005 Monster Cable served AudioQuest with 785 requests for admission seeking infringement-related information about the accused products.

The parties disagree as to the motivation behind and the propriety of the requests for admission. Monster Cable asserts that they were served to allow Monster Cable to prepare for AudioQuest's motion for summary judgment. As Monster Cable had not received AudioQuest's interrogatory response, Monster Cable argues that the requests for admission were necessary insurance. AudioQuest, on the other hand, characterizes the requests for admission as wholly duplicative of the interrogatory and needlessly burdensome.

On May 12, 2005 AudioQuest served its response to Monster Cable's infringement interrogatory, which consisted of a cursory citation to documents produced during fact discovery and to AudioQuest's forthcoming motion for summary judgment. See Masur Dec., Exh. R. Despite the lack of useful information in the response, Monster Cable subsequently withdrew its requests for admission relating to infringement.

3

On May 16, 2005, AudioQuest filed a motion for summary judgment of noninfringement of the '416 Patent with respect to all of the AudioQuest products at issue, or in the alternative, for summary adjudication of noninfringement of the asserted claims of the '416 Patent with respect to certain products. Monster Cable opposed this motion and cross-moved for summary judgment of infringement with respect to all claim limitations.

AudioQuest argued for noninfringement on the basis of five claim elements, three of which appear in the preamble of claim 2 of the '416 Patent. Monster Cable's cross motion alleged that the accused products met all limitations in the *body* of claim 2 and that the language in the preamble did not impose additional limitations. In the alternative, Monster Cable argued that each disputed limit in the preamble was met literally as well as under the doctrine of equivalents. At oral argument, Monster Cable effectively conceded its literal infringement argument but maintained its argument under the doctrine of equivalents.

In the midst of the summary judgment briefing process, Monster Cable filed a motion to preclude untimely produced evidence and to strike references thereto, alleging that certain documents relied upon by AudioQuest had not previously been produced in discovery. Monster Cable was in error, as all but one of the documents had already been produced. The court denied the motion to preclude and noted that Monster Cable's failure to identify the earlier produced documents bordered on sanctionable misconduct. The court, however, chose not to award sanctions *sua sponte*.

The court granted AudioQuest's motion for summary judgment and denied Monster Cable's cross motion on August 8, 2005. In denying Monster Cable's motion, the court held that the language of the preamble was inherently intertwined with the body of the claim, and therefore that the elements of the preamble imposed additional limitations on the claim. The court also held that Monster Cable's literal infringement arguments had no merit, and that the accused AudioQuest products were not equivalent to the claimed invention because they achieved electromagnetic isolation in a substantially different way.

AudioQuest now seeks an award of its attorneys' fees for the entire lawsuit based on Monster

Cable's allegedly inadequate prefiling investigation. In the alternative, AudioQuest seeks attorneys' fees incurred in connection with Monster Cable's motion to seek reconsideration of the court's Markman ruling, Monster Cable's requests for admission, and Monster Cable's motion to preclude untimely produced evidence.

LEGAL STANDARD

Pursuant to Rule 11, a court may sanction an attorney or party who makes improper representations to the court, such as through the filing of papers for an "improper purpose" or which contain "allegations and other factual contentions...[that have no] evidentiary support." See Fed. R. Civ. Pro. 11(b)(2)–(3).

Under the Patent Act, a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Misconduct during litigation, vexatious or unjustified litigation, and frivolous suits are among the circumstances which may make a case "exceptional" under section 285. See Amsted Indus., Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 376 (Fed. Cir. 1994) (quoting Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989)); Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002) ("[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney [sic] fees, and may suffice, by themselves, to make a case exceptional"). A frivolous suit for infringement is one in which the patentee knew or should have known that the suit was baseless. See Automated Bus. Cos., Inc. v. NEC Am., Inc., 202 F.3d 1353, 1354 (Fed. Cir. 2000); Haynes Int'l, Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993), modified by 15 F.3d 1076 (Fed. Cir. 1994). The party seeking attorneys' fees must prove that the case is exceptional by clear and convincing evidence. Interspiro USA, Inc. v. Figgie Intern. Inc., 18 F.3d 927, 933 (Fed. Cir. 1994).

Additionally, 28 U.S.C. section 1927 provides authority for the imposition of sanctions against attorneys. It states in relevant part that "any attorney...who so multiplies the proceedings... unreasonably and vexatiously may be required [to pay the] excess costs, expenses, and attorneys'

fees reasonably incurred because of such conduct." See 28 U.S.C. § 1927. In order to impose sanctions under section 1927, there must be a showing of subjective bad faith on the part of the attorney. See Salstrom, et al., v. Citicorp Credit Servs., Inc., 74 F. 3d 183 (9th Cir. 1995), cert. denied sub nom Webb v. Citicorp Credit Servs., Inc., 519 U.S. 813 (1996) (quoting MGIC Indem. Corp. v. Moore, 952 F.2d 1120, 1122 (9th Cir. 1991)). Knowing or reckless behavior is sufficient to establish a finding of bad faith. New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989).

DISCUSSION

I.      Adequacy of Monster Cable's Pre-Filing Investigation

In order to obtain fees associated with the entire lawsuit, AudioQuest must prove by clear and convincing evidence that Monster Cable conducted an inadequate pre-filing investigation. AudioQuest offers four bases for this assertion.

     A.      Two Opinions of Counsel

First, AudioQuest claims that obtaining two separate opinions of counsel prior to filing a lawsuit is suspicious, and suggests that the first opinion may not have concluded that AudioQuest's products infringe. Following oral argument for this motion, the court reviewed the two opinions of counsel *in camera*. Based on this review, AudioQuest's insinuation is without merit. Both opinions found a reasonable probability of infringement.

     B.      Reverse Engineering

Second, AudioQuest contends that Monster Cable's limited investigation of the accused products is inadequate as a matter of law because Monster Cable did not reverse engineer each of the accused products and perform an element-by-element comparison against the asserted claims. Monster Cable counters that it was only required to perform the reverse engineering analysis for a

single accused product and compare that product against each of the asserted claims. For the remaining products, according to Monster Cable, it was sufficient to review AudioQuest's publicly available data sheets. Both parties cite Network Caching Technology LLC v. Novell Inc., No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug 13, 2002) (Walker, J.) in support of their arguments. The court in Network Caching Technology held that Rule 11 requires "that a plaintiff compare *an accused product* to its patents on a claim by claim, element by element basis for *at least one* of each defendant's products." Id. at *5 (emphasis added). The quoted language plainly requires Monster Cable to investigate only a single accused product in detail.

AudioQuest's argument that Monster Cable was required to reverse engineer every accused product depends on the linguistically untenable position that "each defendant's products" actually means "each *of* defendant's products." To the contrary, Network Caching Technology involved multiple defendants; the plaintiff was required to establish a reasonable infringement position with respect to each of them. Id. at *1. In this lawsuit there is a single defendant. Thus, in order to comply with the requirement set forth in Network Caching Technology, Monster Cable was required at a minimum to reverse engineer a single accused product—here, the Jaguar one-meter cable—and perform an element-by-element analysis against the asserted claims.

Reverse engineering a single product will not be adequate in all cases, of course. Where the accused products differ materially from each other, simply reviewing data sheets for the other products may not be enough. Here, the accused products have cross sections with varying geometries, but all make use in some form or another of a conductive shield surrounding a center conductor. Under Monster Cable's broad construction of the claims, this common characteristic may have been sufficient to support a finding of infringement. The court subsequently found Monster Cable's construction to be erroneous, but not so objectively unreasonable as to warrant imposing sanctions.

AudioQuest also points out that the evidence of Monster Cable's pre-filing investigation of the accused products (other than the Jaguar cable) is very sparse. Neither of Monster Cable's

opinions of counsel mentions an investigation of the other accused products, and there is no contemporaneous record of that investigation currently before the court. However, along with its opposition to this motion Monster Cable filed a declaration from the attorney who performed the investigation, which states that he had reviewed the publicly available product specifications and had performed an element-by-element comparison with claim 2. In addition, Monster Cable's preliminary infringement contentions, filed after the commencement of the lawsuit, reflect a product-by-product, element-by-element analysis. In combination, these two pieces of evidence support Monster Cable's contention that it investigated each accused product prior to filing the lawsuit. AudioQuest has not proved by clear and convincing evidence that Monster Cable failed to do so.

### C. Infringement Analysis Underlying Monster Cable's Motion for Summary Judgment

Third, AudioQuest argues that Monster Cable failed to include a complete element-by-element analysis in its cross-motion for summary judgment of infringement, as is required to carry its burden of proof. Monster Cable's moving papers focused on the five disputed elements that were also the subject of AudioQuest's motion for summary judgment of noninfringement: "coaxial cable," "center conductor," "conductive shield," "means for applying the electrical signal," and "bias means."

AudioQuest does not dispute that it included with its own motion for summary judgment Monster Cable's Patent Local Rule 3-1(c) infringement charts, which purport to provide facts in support of infringement for each element of the body of claim 2, or that Monster Cable addressed each element of the body of claim 2 as well as the disputed elements of the preamble—"coaxial cable," "center conductor," and "conductive shield"—in its motion. Nor does AudioQuest identify a particular element of the preamble that Monster Cable failed to address. AudioQuest also ignores the nature of Monster Cable's argument, which was that the preamble of claim 2 did not impart additional limitations on the claimed invention. Although the court rejected Monster Cable's legal argument, Monster Cable's factual proffer was adequate under its mistaken view of the law.

D.   Assertion of Claim 1

Fourth, AudioQuest contends that Monster Cable improperly asserted claim 1 of the '416 Patent, or refused to clarify that claim 1 was not asserted, despite the lack of any reasonable basis for finding infringement. Claim 1 requires "digital gates" which are indisputably not present in AudioQuest's products. Monster Cable replies that the complaint does not (and is not required to) assert any individual claims, and that Monster Cable's infringement contentions, served on AudioQuest on September 9, 2004, do not include allegations of infringement of claim 1. At oral argument AudioQuest was unable to identify any authority requiring Monster Cable to disclose its detailed infringement contentions any earlier than required by Patent Local Rule 3-1. Without some coherent argument as to why Monster Cable's disclosure of its infringement contentions was untimely, the court cannot award attorneys' fees on this theory.

The court has certainly harbored substantial concerns about the merits of this lawsuit from early on. Monster Cable has repeatedly engaged in tactics and advanced arguments that demonstrate, viewed charitably, a certain lack of attention to detail; some of these tactics and arguments are discussed below. It does not improve the court's opinion that at oral argument for this motion Monster Cable represented that its attorneys had reverse engineered two products prior to filing the lawsuit, one for each opinion of counsel that Monster Cable obtained. In fact, Monster Cable's lawyers apparently reverse engineered the very same product—the Jaguar cable—both times. This sort of dissembling and shading of the truth is disrespectful of the court and comes perilously close to the threshold for sanctionable conduct.

That said, the burden placed on the party seeking attorneys' fees is heavy. Monster Cable has provided evidence that it performed the bare minimum analysis necessary to file the complaint in this action, and AudioQuest has failed to establish objectively unreasonable behavior on Monster Cable's part by clear and convincing evidence. Thus a blanket award of attorneys' fees spanning the entire action is unwarranted.

## II. Discovery and Motion Practice Abuses

AudioQuest's remaining contentions pertain to two of Monster Cable's motions and one of Monster Cable's written discovery requests. AudioQuest argues that Monster Cable's Motion for Leave to File Motion for Reconsideration of Claim Construction Order (filed on May 4, 2005), and Motion to Preclude Untimely Produced Evidence and to Strike References Thereto (filed on June 20, 2005) were objectively frivolous. AudioQuest also argues that Monster Cable's decision to serve 785 requests for admission on the day after a case management conference was unreasonable and in bad faith. The court considers each alleged abuse in turn.

### A. Motion Seeking Reconsideration

The sole basis for Monster Cable's motion seeking reconsideration of the court's claim construction order was a single sentence in Gillette Co. v. Energizer Holdings, Inc., stating generally that "[t]he word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended." 405 F.3d at 1371. Gillette simply restates a common convention of claim interpretation and says nothing at all about the effect of the word "comprising" on elements in the preamble, as opposed to the body. The court has already found that Monster Cable "willfully [misread]" both the Markman order in this case and Gillette, noting that Monster Cable's argument "defies grammar and logic." Given the lack of any reasonable basis for Monster Cable's motion, it is appropriate to award attorneys' fees in the amount claimed by AudioQuest, $1,510.

### B. Motion to Preclude

This court has already, *sua sponte* considered whether Monster Cable was unreasonable in moving to preclude certain evidence AudioQuest used in support of its motion for summary judgment. See Order of August 8, 2005 at n.4. Although Monster Cable was not particularly diligent in filing its motion, the court accepted the explanation that Monster Cable had inadvertently

confused two documents. Nothing in the current motion provides a reason to revise this conclusion, and AudioQuest's request for fees in connection with the motion to preclude is denied.

### C. Requests for Admission

It is difficult to imagine how filing 785 requests for admission—prepared in advance, by Monster Cable's own admission—the day after a case management conference could be viewed as reasonable. Monster Cable asserts, in effect, that the requests were a preemptive strike in anticipation of AudioQuest's deficient response to Monster Cable's outstanding contention interrogatory. Discovery, however, is not a game of tit-for-tat. Monster Cable's act of self-help—the litigation equivalent of vigilante justice—was entirely inappropriate for two reasons. First, Monster Cable had an obligation to confer with AudioQuest in an attempt to obtain the discovery it needed. Second, Monster Cable had ample opportunity to raise any discovery issues related to summary judgment motions with the court. Monster Cable's failure to do so is inexcusable, particularly in light of the case management conference that took place *one day prior* to the date of the requests for admission.

The fact that AudioQuest's response to Monster Cable's interrogatory was so shoddy does not give the court great comfort; it is arguably appropriate to invoke the doctrine of *maledicta sunt duo dom*ū*s vestri* and deny any award of fees altogether. Strictly speaking, however, the adequacy of AudioQuest's response is irrelevant to the propriety of the requests for admission, which were served over two weeks earlier. AudioQuest's motion for attorneys' fees in the amount of $6,405 is therefore granted.

### III. Subjective Bad Faith

Although AudioQuest identifies several instances of poor judgment, two of which rise to the level of sanctionable conduct, the court does not find that Monster Cable acted with subjective bad faith in this lawsuit. An award of fees under 28 U.S.C. section 1927 is therefore inappropriate.

11

CONCLUSION

For the above reasons the court hereby GRANTS IN PART and DENIES IN PART defendant's motion for attorneys' fees. Monster Cable is ordered to make payment of $7,915 to AudioQuest within 30 days of this order.

IT IS SO ORDERED.

Date: October 13, 2005

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTES

1. Unless otherwise noted, background facts are taken from the declarations accompanying the parties' briefs.